```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------
HOP ENERGY, LLC,
                                        09 Civ. 8269 (JGK)
                    Plaintiff,
                                        MEMORANDUM OPINION
          - against -                   AND ORDER

LOCAL 553 PENSION FUND,

                    Defendant.
--------------------------------------
```

**JOHN G. KOELTL, District Judge:**

The plaintiff, HOP Energy, LLC ("HOP"), brought this action to vacate Arbitrator Elliott Shriftman's August 31, 2009 Opinion and Award ("Award"). The Award upheld the assessment of the defendant, Local 553 Pension Fund ("Pension Fund"), that HOP was subject to withdrawal liability pursuant to section 4219 of the Employee Retirement Income Security Act of 1974 (codified as amended at 29 U.S.C. § 1399) ("ERISA") as a result of HOP's sale of the assets of its Madison Oil Division ("Madison") to the Approved Oil Company ("Approved") in May 2007. The Arbitrator rejected HOP's contention that it was exempt from withdrawal liability under the sale of assets provision of section 4204 of ERISA, 29 U.S.C. § 1384, and entered an Award in favor of the Pension Fund. The defendant Pension Fund cross-moves to confirm the Award.

I

The following facts are undisputed and are taken from the Record of Arbitration ("Record"), unless otherwise indicated.

The defendant Pension Fund is an "employee benefit plan" and a "multiemployer plan" for the purposes of section 3(3) and 3(37) of ERISA, 29 U.S.C. § 1002(3) and 1002(37). The plaintiff, HOP, is an employer within the meaning of section 3(5) of ERISA, § 1002(5), and was a signatory to the 2004-2007 Master Contract of Teamsters Local Union No. 553 at the time of HOP's sale of Madison to Approved in May 2007. (Record 56-57, 239-266). Approved was a signatory to the 2004-2007 Master Contract as well as to the 2007-2010 Master Contract of Teamsters Local Union No. 553 (collectively, the "Master Contracts" or "collective bargaining agreement"). (Record 56-57, 267-291.) Approved was a signatory to the Master Contracts both before and after the sale of the Madison assets. (Record 56-57.)

HOP sold its Madison assets to Approved pursuant to an Asset Purchase Agreement ("APA") entered into by HOP and Approved on April 12, 2007. (Record 206.) After the sale of Madison, HOP ceased making contributions to the Pension Fund. (Record 324.) As a result, in July 2007, the Trustees of the Pension Fund assessed withdrawal liability against HOP pursuant

to section 4219 of ERISA, 29 U.S.C. § 1399, in the amount of $1,204,007.  (Record 324.)  HOP contested the assessment of withdrawal liability and filed for arbitration pursuant to section 4221 of ERISA, 29 U.S.C. § 1401.  (Record 2.)  HOP contended that the Pension Fund should have granted HOP an exemption from withdrawal liability under the sale of assets provision of section 4204 of ERISA, 29 U.S.C. § 1384.  (Record 5.)  The parties stipulated before the Arbitrator that the transaction between HOP and Approved met the requirements of the sale of assets exemption in sections 4204(a)(1)(B) and 4204(a)(1)(C).  (Record 3.)  Those provisions required the purchaser to provide a bond and the seller to be secondarily liable for a set amount of time.  As a result the only issue for the Arbitrator in determining whether the transaction complied with the sale-of-assets exemption was whether the transaction met the requirements of section 4204(a)(1)(A).  (Record 2.)  That section requires the purchaser of assets to have "an obligation to contribute to the plan with respect to the operations for substantially the same number of contribution base units for which the seller had an obligation to contribute to the plan,"  29 U.S.C. § 1384(a)(1)(A).

    The Arbitrator issued his Award on August 31, 2009, upholding the Pension Fund's assessment of withdrawal liability against HOP.  The Arbitrator found that the transaction between

3

HOP and Approved failed to meet the requirements of section 4204(a)(1)(A) because there was no evidence that Approved actually had an obligation to contribute to the plan "for substantially the same number of contribution base units." (Record 28-31.)

Pursuant to section 4301 of ERISA, 29 U.S.C. § 1451, HOP brought this action and now moves to vacate the Award. The defendant moves to confirm the Award.

II

The parties dispute the proper standard of review for the Court to apply in this case. The defendant, citing a case from the Seventh Circuit Court of Appeals, argues that the question of whether a party has satisfied the requirements of an exemption from withdrawal liability under ERISA is a mixed question of law and fact and is subject to review for clear error. See Chicago Truck Drivers, Helpers and Warehouse Workers Union (Indep.) Pension Fund v. Louis Zahn Drug Co., 890 F.2d 1405, 1412 (7th Cir. 1989). The plaintiff argues that the proper standard of review is de novo because the arbitrator's determination of whether the transaction complied with the statutory exemption is a question of law. HOP cites a case from the Second Circuit Court of Appeals in which the Court assumed, without deciding, that the de novo standard was appropriate for

the review of arbitrators' decisions regarding withdrawal liability.  Bowers v. Andrew Weir Shipping, Ltd., 27 F.3d 800, 804-05 (2d Cir. 1994).  The Court of Appeals noted that "all the other circuits that have considered the issue" have decided that the same standard applies.  Id.  At least one district court in this Circuit has recognized that the Court of Appeals has assumed that the de novo standard is appropriate.  ISB Liquidating Co. v. District No. 15 Machinists' Pension Fund, 127 F. Supp. 2d 192, 206 (E.D.N.Y. 2001).

While the Court of Appeals for the Second Circuit has not finally decided the issue and has only "assumed" that de novo review is the appropriate standard, the guidance provided in Bowers, including the Court's indication that all other circuits that have considered the issue have applied the de novo standard, is instructive.  Because, as the Arbitrator found (Record 23), the question of whether HOP's sale of its Madison assets complied with the statutory requirements to qualify for an exemption is essentially a question of law, the Court will review the Arbitrator's Award de novo.

### III

In any event, the standard of review is not determinative in this case because the Arbitrator's decision was correct.

Section 4204 of ERISA provides an exemption from the imposition of withdrawal liability on a seller who withdraws from contributing to a covered pension plan if the seller engages in a "bona fide, arm's-length sale of assets to an unrelated party" that meets certain statutory requirements. 29 U.S.C. § 1384(a)(1). Among other requirements, the purchaser of the assets must have "an obligation to contribute to the plan with respect to the operations for substantially the same number of contribution base units for which the seller had an obligation to contribute to the plan." Id. at § 1384(a)(1)(A). In this case, the contribution base units are a function of the hours worked by covered employees, as indicated in section 49(a) of the collective bargaining agreement. (Record 253, 282.)

The imposition of withdrawal liability under ERISA "was enacted as a strict liability measure" on the withdrawing employer and "exemptions to a withdrawing employer's liability should be narrowly construed." N.Y. State Teamsters Conf. Pension & Retirement Fund v. St. Lawrence Transit Mix Corp., 612 F. Supp. 1003, 1009 (N.D.N.Y. 1985); see also Brentwood Fin. Corp. v. W. Conference of Teamsters Pension Trust Fund, 902 F.2d 1456, 1460 (9th Cir. 1990). The parties' substantial compliance, or intent to comply, with the requirements of section 4204 is not enough; strict compliance with the statute is required. See Brentwood, 902 F.2d at 1460; Cent. States, Se.

6

& Sw. Areas Pension Fund v. Carstensen Freight Lines, Inc., No. 96 C 6252, 1997 WL 391928, at *6 (N.D. Ill. July 10, 1997) (noting that despite parties' intent, sale did not qualify for exemption under section 4204).  The transaction must comply with section 4204 at the time of the sale of the assets and compliance cannot be perfected after the sale or be proven using evidence of the parties' actions after the sale.  Jaspan v. Certified Indus., Inc., 645 F. Supp. 998, 1005-06 (E.D.N.Y. 1985); see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Cullum Companies, Inc., 973 F.2d 1333, 1338 (7th Cir. 1992).  The party seeking an exemption from withdrawal liability bears the burden of proving that the exemption applies.  See Republic Indus., Inc. v. Cent. Pennsylvania Teamsters Pension Fund, 693 F.2d 290, 297 (3d Cir. 1982).

On its face, the APA between HOP and Approved does not comply with section 4204(a)(1)(A).  The only provision of the APA that mandates the contributions by the purchaser required by the statute is the first sentence of section 12.3(a) of the APA. That sentence provides that "[t]he Purchaser shall make contributions to the [Pension Fund] for substantially the same number of contribution base units for which Seller had an obligation to contribute with respect to the operations covered by the [Pension Fund]."  (Record 232.)  However, the next

sentence of section 12.3(a) negates any obligation by the purchaser created by the first sentence of that section:

> Notwithstanding the previous sentence and except as otherwise provided in Section 12.1, nothing in this Section shall impair or limit the Purchaser's right to discharge, lay off or hire employees or otherwise to manage the operations of the Business, including the right to amend, revise or terminate any collective bargaining agreement currently in effect and, as a consequence, reduce to any extent the number of contribution base units with respect to which the Purchaser has an obligation to contribute to any plan.

At oral argument, HOP conceded that section 12.3(a) did not meet section 4204(a)(1)(A)'s requirements.  Rather, HOP argues that the transaction as a whole meets the requirements of section 4204(a)(1)(A) because, when Approved purchased the Madison assets, Approved assumed all of HOP's obligations under the collective bargaining agreement, including HOP's obligation to contribute to the Pension Fund for work by covered Madison employees.  HOP argues that because the second sentence of section 12.3(a) of the APA provides only that "nothing in this [s]ection" shall limit the rights of Approved to reduce its contributions, that sentence should not be read to mean that Approved has the right to reduce its contributions.  HOP alleges that Approved has some otherwise-imposed obligation to contribute "for substantially the same number of contribution

8

base units" and that section 12.3(a) does not affect that obligation.

However, HOP has failed to point to any specific provision in any of the agreements between HOP and Approved that requires Approved to contribute to the plan "for substantially the same number of contribution base units" as HOP was required to contribute to the plan.  As the Arbitrator noted (Record 26), the fact that the purchaser in this case was a party to the collective bargaining agreement both before and after the sale and had an obligation to contribute to the Pension Fund for hours worked by its covered employees did not create an explicit obligation for Approved to contribute "for substantially the same number of contribution base units" as HOP.  In fact, section 12.3(a) of the APA suggests that Approved retained some extrinsic right outside of section 12.3(a) to "amend, revise or terminate any collective bargaining agreement currently in effect and, as a consequence, reduce to any extent the number of contribution base units" for which it was obligated to contribute.

HOP argues that section 12.3(a) is limited to specifying that "nothing in this [s]ection" shall limit any right that Approved had to reduce its obligation to contribute to the plan and does not show that Approved had a right to reduce its contributions to the plan.  However, the second sentence of

9

section 12.3(a) indicates that that section does not "impair or limit" the right of Approved to reduce its contribution base units, which right Approved apparently otherwise retains.  In any event, the second sentence of section 12.3(a) negatives any implication that the section creates an obligation by Approved to contribute the same number of contribution base units that HOP had.

HOP cites one case from another circuit for the proposition that the obligations created for a purchaser stepping into the shoes of a seller in a collective bargaining agreement can satisfy section 4204(a)(1)(A)'s requirements.  See Cullum, 973 F.2d at 1338.  While that may be true in some instances, HOP has not shown that the collective bargaining agreement in this case created an explicit obligation for Approved, the purchaser, to contribute "for substantially the same number of contribution base units" for which HOP contributed.  Furthermore, the particular case HOP cites is not helpful to HOP's argument because in that case, the court did not rely on the existence of a collective bargaining agreement alone to find that section 4204(a)(1)(A)'s requirements were met.  Id.  Rather, the parties in that case entered into a purchase agreement that explicitly stated that the purchaser had an obligation to enter into a written agreement with the union to contribute for what the court found was substantially the same number of contribution

base units as the seller had an obligation to contribute.  Id. at 1335-36.

Next, HOP argues that the Arbitrator erred by failing to accept testimony about the intentions of the parties in entering into the transaction.  Specifically, HOP sought to introduce the testimony of Approved officials concerning the intended meaning of section 12.3(a) of the APA.  The APA is governed by New York law.  (Record 236.)  Under New York law, when contract terms are unambiguous, they must be given effect as written.  See Greenfield v. Philles Records, Inc., 780 N.E.2d 166, 170 (N.Y. 2002).  Extrinsic evidence cannot be used to vary the terms of a facially unambiguous contract.  See Chimart Assocs. v. Paul, 489 N.E.2d 231, 233 (N.Y. 1986).[1]  Because HOP has failed to point to any part of section 12.3(a) that is ambiguous, and because the section was, in fact, unambiguous, the Arbitrator did not err in refusing to allow extrinsic evidence concerning the section's meaning.

Finally, HOP argues that the Arbitrator erred by failing to consider the actual contributions Approved made to the Pension Fund after the purchase of the Madison assets.  However, as discussed above, the appropriate time for determining whether

---

[1] The same rules of contract interpretation apply to the interpretation of collective bargaining agreements.  See Aeronautical Indus. Dist. Lodge 91 v. United Techs. Corp., 230 F.3d 569, 576 (2d Cir. 2000); Keane v. Zitomer Pharmacy, Inc., No. 06 Civ. 5981, 2010 WL 624285, at *3 (S.D.N.Y. Feb. 23, 2010).

11

section 4204's requirements are met is at the time of the sale. See Jaspan, 645 F. Supp. at 1005. The fact of actual post-sale contributions is not relevant to the question of whether the purchaser had an obligation, at the time of the sale, to contribute "for substantially the same number of contribution base units." Therefore, the Arbitrator did not err by excluding evidence concerning Approved's post-sale contributions.

## CONCLUSION

For the reasons stated above, the defendant's motion to confirm the Arbitration Award is **granted** and the plaintiff's motion to vacate the Award is **denied**. The Clerk is directed to enter judgment confirming the Award and closing this case.

**SO ORDERED.**

Dated:   New York, New York
         August 25, 2010

/s/ John G. Koeltl
John G. Koeltl
United States District Judge